## A. C. DIECKMANN, Appellant, v. ERNST ROBYN, Respondent.

### St. Louis Court of Appeals, December 5, 1911.

1. **CONTRACTS: Corporations: Stockholder's Agreement Regarding Vote: Legality of Contract.** A contract between a stockholder of a corporation about to be organized (who, with two others, controlled the majority of its stock) and the owner of certain land, providing that, if such stockholder would procure the purchase of such land by the corporation, by securing the votes of such other stockholders, the owner of the land would pay him one-half of the amount secured therefor above a certain sum, was a constructive fraud upon the corporation and other stockholders and void as against public policy.

2. ————: **Void as Against Public Policy: Action.** In an action on a contract which is void as against public policy, an objection that it is void for that reason is allowed to prevail, even when put forward by one who participates in the wrong, since the law will not lend its aid to enforce such a contract, but will leave the parties where they have placed themselves.

3. **PLEADING: Demurrer to Petition.** A demurrer to a petition confesses the averments of the petition.

Appeal from St. Charles Circuit Court.—*Hon. James D. Barnett,* Judge.

AFFIRMED.

*J. B. Garber* and *Theo. C. Bruere* for appellant.

*T. F. McDearmon* and *Rassieur, Kammerer & Rassieur* for respondent.

(1)   The facts stated in the petition show that the appellant had been and was promoting the organization and incorporation of the Central Bank of St. Charles at the time the alleged contract between him and respondent was entered into, by and through which contract he was to receive from respondent the sum of eleven hundred dollars for his services and influence with the subscribers for stock and stockholders in said bank, in inducing them to vote for the purchase of respondent's house and lot at the price of fifteen thousand dollars.   Such a contract is under the condemnation of the law and there can be no recovery thereon.   Seehorn v. Hall, 130 Mo. 257; Land Co. v. Case, 104 Mo. 572; Exter v. Sawyer, 146 Mo. 302; Emery v. Parrott, 107 Mass. 95; Oil Co. v. Densmore, 64 Pa. St. 43; Short v. Stephenson, 63 Pa. St. 95; Simons v. Oil & M. Co., 61 Pa. St. 202; Getty v. Devlin, 54 N. Y. 403; Chadler v. Bacon, 30 Fed. 538; Stove Co. v. Wilcox, 64 Conn. 101; Boster v. Land Co., 89 Va. 455; Brewster v. Hatch, 122 N. Y. 349; Cook on Stocks and Stockholders, sec. 657.   (2)   Promoters beneficially interested in the corporation cannot be at the same time sellers and buyers; they cannot sell in one character to themselves in another.      Stove Co. v. Wilcox, 64 Conn. 102; Getty v. Devlin, 70 N. Y. 504; Munson v. Railway, 103 N. Y. 58; 23 Am. & Eng. Ency. L. (2 Ed.), page 236, par. 4.

STATEMENT.—The court sustained a demurrer to plaintiff's petition and from this judgment plaintiff prosecutes the appeal. Omitting caption and signatures, the petition is as follows:

"Plaintiff by leave of court first had and obtained files this his amended petition and for cause of action states that on the 18th day of July, 1907, defendant who was then the owner of certain real estate, situate in the city and county of St. Charles, Missouri, employed plaintiff to aid him to sell the same to a corporation then about to be organized and to be known as the Central Bank of St. Charles, Missouri, that at the time of said employment this plaintiff together with one Adam Peifer and August Barthel had subscribed for and were entitled to fifty-one shares of stock in said bank to be organized and to be known as the Central Bank of St. Charles, Missouri, that it was agreed between plaintiff and defendant that if the plaintiff, after the said bank was organized, would vote the stock held by himself in said bank and also procure and induce the said Peifer and Barthel to vote the stock held by them in said bank in a stockholders' meeting to be thereafter called, in favor of purchasing defendant's said real estate for the sum of fifteen thousand dollars, and if the stockholders of said bank at said meeting should vote for said purchase and did purchase said real estate for the sum of fifteen thousand dollars, that the plaintiff should receive as compensation for his service in so helping defendant to effect a sale to said Central Bank one-half of all money obtained for said real estate in excess of twelve thousand five hundred dollars, after deducting from the sale price of said real estate a certain other commission of two per cent on the amount of the sale price to be paid one B. L. Emmons.

Plaintiff further states that in pursuance of said employment he did on the . . . day of . . . 1907, at a meeting of the stockholders of said Central

Bank, and after said bank was organized vote the
stock held by himself in said bank, and did also pro-
cure and induce the said Peifer and Barthel to vote
at said meeting the stock held by them in said bank,
in favor of purchasing defendant's said real estate
for the sum of fifteen thousand dollars, and the stock-
holders of sa'd Central Bank at said meeting voted
for said purchase and did purchase said real estate
at the sum of fifteen thousand dollars, and defendant
did thereafter on the  . . .  day of  . . .  1907,
because of said vote sell to said Central Bank said
real estate for the sum of fifteen thousand dollars paid
to defendant by said bank.

Plaintiff further says that he has fully performed
the services by him rendered to defendant, and that
he is entitled to the sum of eleven hundred dollars,
the amount earned by him under the terms of his con-
tract with defendant, and which is due him and re-
mains unpaid. Wherefore, plaintiff prays judgment
against defendant for the sum of eleven hundred dol-
lars, and for cost of suit.''

NORTONI, J. (after stating the facts).—The
court very properly sustained the demurrer. This
petition alleges that plaintiff, a stockholder in the
corporation then being ·organized, agreed to sell his
vote for a valuable consideration, payable to himself,
and that he afterwards cast the vote at a meeting of
the stockholders in accordance with such contract. Be-
cause of his performance of this agreement, he seeks
to recover the consideration which it was agreed he
should have for his vote. This alone not only ought
to be enough, but is sufficient, to defeat his right of
recovery as a matter of law. Such a contract is void
as against public policy, and it operates as a con-
structive fraud upon the corporation then being or-
ganized and upon other stockholders as well. It vouch-
safes a valuable consideration to plaintiff, a stock-

holder of the corporation then in the process of formation, which may induce him to violate whatever trust relation he occupies, to the end of furthering his own private interests as against those of the company and other stockholders. That such a contract is void on the ground of public policy alone is not to be questioned. [See Guernsey v. Cook, 120 Mass. 501; Woodruff v. Wentworth, 133 Mass. 309.]

It is true that the objection the contract is illegal and void as against public policy comes with poor grace from a defendant who is a party thereto, but be this as it may, such objection is allowed to prevail, even when put forward by one who participates in the wrong, not, however, as a protection to him, but for the sake of the public good and because the law will not lend its aid to enforce such an illegal contract. In such circumstances, the law leaves the parties where they place themselves. [Attaway v. Third National Bank, 93 Mo. 485, 5 S. W. 16.] Of course, what has been said as to the defendant proceeds on the hypothesis that his demurrer confesses the averments of the petition, for such is the theory of the law. But though such be the rule, we are wholly unadvised as to the truth of the facts charged and in no respect do we suggest defendant a participant in the wrong except as it appears confessed in theory of law by the demurrer. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.